**In re Denis CHIRA, Debtor.**

**Elizabeth Chira, Appellant,**

v.

**Jose Saal, and Sonya Salkin, as Chapter 7 Trustee of the Estate of Denis Chira, Appellees.**

**No. 06–61410–CIV.**

United States District Court, S.D. Florida.

April 16, 2007.

Charles W. Throckmorton, IV, Kozyak Tropin & Throckmorton, Coral Gables, FL, for Appellant.

Ivan J. Reich, Kevin Markow, Becker & Poliakoff, Fort Lauderdale, FL, for Appellee Jose Saal.

Patrick S. Scott, Law Office of Patrick Scott, Fort Lauderdale, FL, for Appellee Sonya L. Salkin.

## ORDER [1]

ALTONAGA, District Judge.

**THIS CAUSE** comes before the Court upon Elizabeth Chira's ("Appellant['s] or Elizabeth['s]") appeal from an order of the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") granting Trustee, Sonya Salkin's Motion to Assume Executory Contract for the Sale of Real Property and to Settle Dispute with Jose Saal (the "365 Assumption and Settlement Motion").[2] The Court has carefully reviewed the briefs submitted by the parties, the applicable case law, pertinent portions of the record and heard oral argument on January 23, 2007.

### I. BACKGROUND

This appeal arises from an order of the Bankruptcy Court granting a motion by the Trustee to (1) assume an executory contract in the Chapter 7 bankruptcy case of Denis Chira ("Debtor" or "Denis") and (2) to settle a dispute with Jose Saal ("Saal"). The executory contract involves the sale of the Sheldon Beach Hotel (the "Hotel"), a 42–room hotel located in Hollywood, Broward County, Florida. Denis Chira owns fifty percent of the Hotel, and his former wife, Elizabeth Chira, owns the other fifty percent. (*See Appellant's Brief* at 2–4).

The Chiras were married from 1970 until they divorced in 1999. (*See id.* at 3). On April 14, 2005, certain creditors filed an involuntary bankruptcy petition against

---

1. References to the record on appeal are indicated by "R," followed by the docket entry number from the Bankruptcy Court.

2. Jose Saal filed a memorandum as an interested party in support of the Trustee's 365 Assumption and Settlement Motion (*See* R. 130)

Denis Chira, and the Bankruptcy Court entered an order for relief under Chapter 7 on June 20, 2005. (*See* R. 1; R. 29). The Bankruptcy Court appointed Sonya Salkin Trustee. (*See* R. 25).

Prior to Denis' involuntary bankruptcy, he and Appellant had engaged in extensive litigation in state court (the "divorce court") concerning disposition of the Hotel. (*See* R. 154, p. 2). Pursuant to the Chiras' divorce judgment, entered on June 17, 1999, Denis and Elizabeth would continue to own the Hotel as joint owners. (*See id.*). The divorce judgment incorporated a post-nuptial agreement, executed by Denis and Elizabeth on November 16, 1993, which prohibited either party's unauthorized transfer or sale of any interest in the Hotel without the other party's or the divorce court's express consent. (*See id.*).

After the divorce judgment, Denis and Elizabeth were unable to come to an agreement regarding the ownership, management and disposition of the Hotel, resulting in additional litigation. It was during these proceedings that Elizabeth requested the appointment of a receiver. The divorce court granted Elizabeth's request and appointed Dean Liotta receiver. The receiver was charged with managing the Hotel and the corporation that operated the Hotel, the Sheldon Hotel Lounge Corp. ("Lounge Corp."). (*See Saal's App.* # 2, pp. 10–11, 28, 31).

On August 28, 2003, the divorce court ordered the receiver to sell the Hotel for the benefit of Denis and Elizabeth Chira (the "Sale Procedures Order"). (*See id.* at 14, 34). Thereafter, on January 12, 2004, the divorce court entered an Order Granting Receiver's Motion for Authorization to Accept Purchase Offer and Sell Assets of Receivership Estate, conveying the Hotel to Jose Saal (the "Sale Acceptance Or-

der"). (*See id.* at 14; R. 154, p. 4).[3] As reflected in the Sale Acceptance Order, the court accepted an offer by Jose Saal, acting as nominee for an undisclosed purchaser, of $5,850,000 for the purchase of the Hotel. (*See id.;* R. 130, Exs. "B" & "C").

After entry of the Sale Acceptance Order, the receiver executed a Purchase and Sale Agreement (the "Purchase Agreement"), agreeing to convey the Hotel to the purchaser. (*See Saal's App.* # 2, pp. 14–15; R. 130, Exs. "C" & "D" to Purchaser's Mem.; R.154, p. 4). Pursuant to the Purchase Agreement, the Hotel was to be sold to the purchaser for $5,850,000, "as is, where is." (*See* R. 130, Exs. "C" & "D"). The purchaser was required to make a deposit of $100,000 upon execution of the Purchase Agreement, which was non-refundable except for good and marketable title. (*See id.*). The purchaser also agreed to pay for all costs related to title insurance. (*See id.*). The purchaser further acknowledged that the Hotel was being sold subject to any outstanding code enforcement lien, recorded or pending, in favor of the City of Hollywood or Broward County. The property was also sold subject to restaurant and retail leases. (*See id.*).

Before the sale could be completed, Elizabeth appealed the Sale Procedures Order to the Florida Fourth District Court of Appeal. Elizabeth did not appeal the Sale Acceptance Order. The divorce court stayed the sale pending the state appellate court's ruling. On November 24, 2004, the state appellate court affirmed the Sale Procedures Order. (*See Saal's App.* # 2, pp. 14–15; R. 154, p. 4).

By the time of the affirmance, "nothing could stop the Saal sale from closing except either Saal or the Receiver backing

---

**3.** The Sale Procedures Order and the Sale Acceptance Order, when referred to collec-

tively, are referred to as the "Sale Orders."

out of the contract." (*See Saal's App.* # 2, p. 35). However, and as described by Appellee, "Elizabeth engaged in another stall tactic: she made the 'global' settlement agreement," with Denis and Nick Kahook[4] ("Kahook") through Kahook's wholly-owned and controlled entity, Sheldon Beach Resorts, Inc., and sought discharge of the receiver. (*See id.*). At the same time, Elizabeth also filed a "Motion to Nullify, Vacate and Quash Order Granting Receiver's Motion for Authorization to Accept Purchase Offer and Sell Assets of Receivership Estate to Nullify Contract For Sale and Purchase and for Other Relief" directed to the Purchase Agreement (the "Motion to Vacate Sale"). (*See Saal's Answer Brief* at 10; *Saal's App.* # 2, p. 18).

The divorce court discharged the receiver, finding it was no longer necessary to have a receiver appointed, given the parties' apparent willingness to work together in selling the Hotel. The divorce court, however, did not express any intention to void the Purchase Agreement between the purchaser and the receiver, and denied Elizabeth's Motion to Vacate the Sale. (*See Saal's Answer Brief* at 11 (citing R. 130, pp. 12, 17–25; Exhibit "K" to Purchaser's memo)). The court instructed Elizabeth

and the purchaser to close the sale between themselves. (*See id.* at 13).

On April 14, 2005, before any sale of the Hotel could be consummated, certain creditors filed the involuntary bankruptcy petition (the underlying bankruptcy proceeding in this dispute) against Denis. (*See* R. 154, p. 6). Subsequently, on May 9, 2005, Saal moved for relief from the automatic stay to appeal to the state appellate court two orders that had been denied as moot by the divorce court, Saal's Motion to Reinstate the Receiver (in order to close on the sale of the Hotel), and the Lease Rejection Motion (to void a lease on the property). He also moved to compel the estate to assume or reject the Purchase Agreement. (*See* R. 4). On May 25, 2005, the Bankruptcy Court granted the stay relief requested by Saal but dismissed the appeal of the two orders on the basis that the appeal involved non-appealable interlocutory orders. (*See* R.15).

Thereafter, on June 29, 2005, the Bankruptcy Court entered an Order on Purchaser's Motion to Compel, which extended the time the Trustee had to assume or reject the Purchase Agreement. (R. 36). The Trustee and Saal later reached a "Settlement Agreement" concerning assump-

---

4. In August of 2001, Denis tried to transfer an interest in the Hotel to Nick Kahook, or an entity controlled by him, Sheldon Beach Resorts, Inc., notwithstanding the terms of the divorce judgment entered on June 17, 1999, prohibiting transfers of interest in the Hotel by either Denis or Elizabeth. Denis agreed to sell his interest to Kahook for a quick $50,000 and another $950,000 in the future. It was as a result of Denis' attempt to dispose of his interest in the Hotel, without court approval, that Elizabeth requested the appointment of the receiver, which the court granted by appointing Dean Liotta. (*See Saal's App.* # 2, p. 28). Denis's purported transfer to Kahook was voided by the divorce court, a decision which was affirmed by the Fourth District Court of Appeal in 2003. (*See* R. 154, p. 4. n. 3).

The Global Settlement Agreement was purportedly an attempt by Denis, Elizabeth, and Kahook to resolve claims against Denis and/or Denis' interest in the Hotel, pursuant to the voided conveyances the Kahook Entities had received from Denis following the divorce judgment. In addition, the Global Settlement Agreement sought to bind Denis and the Kahook Entities in assisting Appellant in voiding the Purchase Agreement earlier approved by the divorce court. (*Saal's App.* # 2, pp. 35–36; R.130, Ex. "F" to Purchaser's Memo). The Global Settlement Agreement was never consummated and was subsequently voided by the Bankruptcy Court. (*See Appellant's Brief* at 5, n.1; *Saal's Answer Brief* at 10).

tion of the Purchase Agreement (the same Purchase Agreement initially executed by the receiver and Saal during the state court proceedings). (*See* R.130, Ex. "P" to Purchaser's Memo).

Under the Settlement Agreement, the Trustee agreed to seek permission from the Bankruptcy Court to assume the Purchase Agreement in accordance with Section 365 of the Bankruptcy Code and sell the Hotel for $5,850,000, the pre-bankruptcy sale price established under the original Purchase Agreement. The Trustee also agreed to clear title[5] to the Hotel and eliminate the Sheldon Hotel Lease, which burdened the property.[6] (*See id.*). In exchange for these concessions, Saal agreed to pay the estate $100,000, to be used as a litigation fund for the estate, and an additional $1,900,000. (*See id.*).

Salkin filed the Motion to Assume Executory Contract for Sale of Real Property and to Settle Dispute With Jose Saal (365 Assumption and Settlement Motion) on February 28, 2006. The parties provided written submissions for the Bankruptcy Court's review and a hearing was held on April 3, 2006.

On June 2, 2006, the Bankruptcy Court, citing 11 U.S.C. § 365(a) and Bankruptcy Rule 9019, entered the Order being appealed from, Order Granting the 365 Assumption and Settlement Motion. (*See* R. 154). The Bankruptcy Court's ruling allows for the closing of the Hotel pursuant to the Purchase Agreement. (*See id.* at 7–8, 15). In approving the Trustee's as-sumption of the Purchase Agreement, the Bankruptcy Court found that the Purchase Agreement was a valid and enforceable executory contract. (*See id.* at 15). Further, the Court determined that the Trustee had provided adequate assurances that she would: (a) promptly cure any default, (b) compensate the non-debtor party to the contract for any actual or pecuniary loss resulting from such default, and (c) perform the contract in the future, as required by section 365 of the Bankruptcy Code. (*See id.* at 6).

The Bankruptcy Court determined that the divorce court's earlier dismissal of the receiver, on March 1, 2005, did not invalidate or terminate the Purchase Agreement entered into by the receiver and Saal. The Bankruptcy Court concluded that the divorce court "clearly and unambiguously intended that the Purchase Agreement survive the termination of the Receivership."[7] (*Id.* at 15). The Bankruptcy Court further found that assumption of the Purchase Agreement (an executory contract) was within the Trustee's sound business judgment. (*See id.*).

The Bankruptcy Court also determined that assumption of the Purchase Agreement was in the best interest of the estate because assumption "would obviate any potential rejection claims the Purchaser may have against the bankruptcy estate if the Purchase Agreement were not assumed." (*Id.* at 7). The Court further concluded that the effect of rejecting the executory contract, followed by a sale of the Hotel

---

**5.** The liens and other interests have all been adjudicated in an adversary proceeding and are to be paid at closing. (*See Salkin's Answer Brief* at 16).

**6.** The Hotel Lease has since been declared a sham by the Bankruptcy Court. (*See infra* p. 8; *see also Salkin's Answer Brief* at 16).

**7.** Although raised before the Bankruptcy Court, Elizabeth does not raise here the ter-mination of the receiver as a ground for invalidating the assumption of the Purchase Agreement and reversing the Bankruptcy Court's order granting the assumption. That argument is therefore not considered. *See Chapman v. AI Transport*, 229 F.3d 1012, 1044 (11th Cir.2000) ("It is axiomatic that an argument not raised before the trial court or on appeal has been waived.") (citations omitted).

under a presumably higher and better offer, would be to increase the amount of unsecured claims by an amount equal to at least the difference between the sale price under the existing Purchase Agreement and any new contract. The purchaser would also suffer consequential damages,[8] which in turn would probably exceed the difference in purchase prices, netting no benefit to the estate. (*See id.* at 7–8). Moreover, pursuant to the subsequent Settlement Agreement between the Trustee and Saal, the additional $2,000,000 payment was clearly beneficial to the Chapter 7 estate.

On June 12, 2006, Appellant moved for rehearing and clarification of the 365 Assumption and Settlement Order. (*See* R. 156). The Motion for Rehearing was denied. (*See* R. 185, 200). The Order denying the Motion for Rehearing is not the subject of this appeal. Rather, under review is the Bankruptcy Court's 365 Assumption and Settlement Order. (*See* R. 187).

Other developments in related actions bear mention. On March 7, 2006, a separate adversary proceeding was filed by Trustee Salkin in case number 06–01264–JKO (the "Adversary Case"). In that case, Salkin filed a complaint against Elizabeth and others, seeking equitable subordination of Elizabeth's claims, adjudication of Elizabeth's rights in the Hotel, and invalidation of the June 1999 Lounge Corp. Lease. (*See Saal's App.* # 2).

On August 22, 2006, trial commenced in the Adversary Case. The Bankruptcy Court entered a final judgment on November 17, 2006 in favor of Salkin and against Elizabeth on all counts. (*See id.*). The Bankruptcy Court held that Elizabeth was not entitled to any portion of the gross sales proceeds which exceed half of the purchase price contained in the approved and assumed Purchase Agreement (*see id.; Saal's App.* # 3, p. 3, ¶ 3), and invalidated the Lounge Corp. Lease as a sham. (*See Saal's App.* # 2, pp. 59–63; *Saal's App.* # 3, p. 3, ¶ 4).

Appellant has appealed the Bankruptcy Court's rulings in the Adversary Case and those appeals are also before this Court. (*See* case numbers 07–60049–Civ and 07–60199–Civ). The first appeal, case number 07–60049–Civ, arises from the Bankruptcy Court's order that equitably subordinates Appellant's claims in the Denis Chira Chapter 7 case. The second appeal, case number 07–60199–Civ, involves a "Clarification Order" pursuant to which the Subordination Judgment was implemented, and provides that all of a $2,000,000 fund (the amount Saal agreed to pay the estate under the Settlement Agreement with the Trustee) would be paid to the estate. At the January 23, 2007 oral argument in this case, the parties agreed that these two subsequent appeals should be abated pending resolution of this case.

Since the oral argument, another appeal has been filed in case number 07–60402–Civ, relating to the Bankruptcy Court's Order Granting Plaintiff's Motion to Assess Attorney's Fees and Costs and Judgment for Fees and Costs, entered against Eliezer Botton and in favor of Trustee, Sonya L. Salkin. The parties are in agreement that this appeal should be abated as well, pending the resolution of the issues raised in this case. All related appeals have been abated.

---

**8.** The purchaser, as the owner or manager of adjoining parcels, has indicated that he needs the Hotel site to complete a major development project in Hollywood Beach, Florida. Under these circumstances, the Bankruptcy Court determined that if the Purchase Agreement were rejected by the Trustee, the purchaser would suffer substantial consequential damages. (*See* R. 154, p. 7, n. 6).

Appellant has identified the following issues for the Court to consider:

1. Did the Bankruptcy Court err in ordering the sale of the Sheldon Beach Hotel pursuant to 11 U.S.C. § 365?

2. Did the Bankruptcy Court err in ordering the sale of non-debtor Elizabeth Chira's interest in the Sheldon Beach Hotel without affording her protections under 11 U.S.C. § 363 and Fed. R. Bankr.P. 7001 [9]?

## II. *ANALYSIS*

### A. *Standard of Review*

District courts have appellate jurisdiction over the judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a). On appeal, a district court reviews a bankruptcy court's conclusions of law *de novo. Commodore Holdings, Inc. v. Exxon Mobil Corp.*, 331 F.3d 1257, 1259 (11th Cir.2003) *In re Calvert*, 907 F.2d 1069, 1071 (11th Cir.1990). The parties do not dispute the facts giving rise to this appeal. The issue before the Court turns entirely upon a legal question. Specifically, the Court is asked to determine whether the Bankruptcy Court properly applied section 365 rather that applying section 363 of the Bankruptcy Code, when it approved the sale of the Sheldon Beach Hotel.

### B. *Section 365 of the Bankruptcy Code*

Under section 365 of the Bankruptcy Code, a trustee, subject to court approval, "may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). In the event of a default in an executory contract or unexpired lease of the debtor, the trustee is also charged with compensating, or providing

adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, "for any actual pecuniary loss to such party resulting from such default." *Id.* at § 365(b)(1)(B). Additionally, the trustee has the obligation of providing adequate assurance of future performance under such contract or lease. *Id.* at § 365(b)(1)(C).

The Code does not expressly define what constitutes an "executory contract." *See N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). Professor Vern Countryman has articulated the most widely cited definition of an executory contract. He has defined an executory contract as an agreement in which "the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." V. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN. L. REV. 439, 460 (1974). Most circuits, including the Eleventh Circuit, have approvingly cited Countryman's definition, at least as a starting point, in defining "executory contract." *See Gibson v. Resolution Trust Corp.*, 51 F.3d 1016, 1023 (11th Cir.1995) (citing Countryman in holding that "[e]xecutory contracts have been characterized as those with 'reciprocal remaining obligations' "); *see also In re General DataComm Industries, Inc.*, 407 F.3d 616, 627 (3d Cir.2005); *In re Sunterra Corp.*, 361 F.3d 257, 264 (4th Cir.2004); *Matter of Murexco Petroleum, Inc.*, 15 F.3d 60, 62–63 (5th Cir.1994); *In re Streets & Beard Farm Partnership*, 882 F.2d 233, 235 (7th Cir.1989); *In re Craig*, 144 F.3d 593, 596 (8th Cir.1998); *In re Robert L.*

9. Rule 7001 provides the rules governing adversary proceedings, and is not otherwise addressed in this order.

*Helms Construction & Development Co., Inc.,* 139 F.3d 702, 705 (9th Cir.1998). The Supreme Court has also commented that the "legislative history to § 365(a) indicates that Congress intended the term to mean a contract 'on which performance is due to some extent on both sides.'" *N.L.R.B.,* 465 U.S. at 522 n. 6, 104 S.Ct. 1188.

In the context of real estate contracts, courts have generally found contracts for the sale of real property to be executory in nature. *See In re General Development Corp.,* 84 F.3d 1364, 1371 (11th Cir.1996) (noting that where the debtor is the seller of real estate, the courts have found the contract to be an executory one) (citing *In re Waldron,* 36 B.R. 633 (Bankr.S.D.Fla. 1984), *reversed on other grounds,* 785 F.2d 936 (11th Cir.1986) (option to purchase real estate was executory contract)); *In re Young,* 214 B.R. 905, 910 (Bankr.D.Idaho 1997) (land sale contract was executory as buyer "had yet to pay the purchase price, and [sellers] had yet to transfer title or give up possession of the property"); *In re Sundial Asphalt Co., Inc.,* 147 B.R. 72, 83 (E.D.N.Y.1992) ("Most courts have held that a land sale contract is executory when the debtor-vendor has not yet conveyed or been ordered to convey title.") (citations omitted); *In re Hardie,* 100 B.R. 284 (Bankr.E.D.N.C.1989) (finding that debtor/vendor's contract to sell option to purchase property is executory in nature and could be rejected by the debtor).

The parties do not dispute, and the undersigned agrees, that the Purchase Agreement is an executory contract. The Purchase Agreement involves the sale of real estate, the Sheldon Beach Hotel, jointly-owned by Denis and Elizabeth. In granting the Trustee's Motion to Assume the Purchase Agreement, the Bankruptcy Court determined that the Purchase Agreement was executory in nature because there were material obligations on both sides still unperformed. (*See* R. 154, p. 6). As the Court explained, "[t]he Purchaser had to pay and the Receiver as seller had to deliver title." (*Id.*). Thus, section 365 seemingly applies to assumption of the Purchase Agreement.

### C. *Section 363 of the Bankruptcy Code*

Section 363(b)(1) of the Bankruptcy Code, which Appellant maintains more properly applies to the present situation rather than section 365, states in pertinent part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363(b)(1). Pursuant to this section, the trustee is also authorized to "sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case . . . ." 11 U.S.C. § 363(h). Prior to the commencement of the sale of the property, the debtor's spouse, or a co-owner of such property, is permitted to purchase such property "at the price at which such sale is to be consummated." 11 U.S.C. § 363(i). After the property is sold, the trustee is to distribute to the debtor's spouse or the co-owners of the property, and to the estate, "the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee," of the property sale, in accordance with the interests of such spouse or co-owners, and of the estate. 11 U.S.C. § 363(j).

### D. *The Parties' Arguments*

█ The Bankruptcy Court, upon consideration of Saal's potential claims against the estate, the costly litigation that would result if the Purchase Agreement was not assumed by the estate, and the benefits afforded the estate and its creditors by the

Settlement Agreement, properly determined that the Settlement Agreement was fair and equitable. (*See* R. 154, pp. 7–8). Appellant does not challenge the Bankruptcy Court's authority to approve the post-bankruptcy Settlement Agreement between the Trustee and the Purchaser.[10] What Elizabeth claims is that because the Settlement Agreement modified the pre-bankruptcy Purchase Agreement, the latter could no longer be assumed under section 365. (*See Appellant's Brief* at 7).

According to Appellant, the Bankruptcy Court erroneously ordered the sale of the Sheldon Beach Hotel under authority of section 365 of the Bankruptcy Code. (*See Appellant's Brief* at 5). Appellant contends that the Bankruptcy Court erred when it allowed the assumption of the Purchase Agreement because the Purchase Agreement includes a post-bankruptcy Settlement Agreement that alters the Purchase Agreement and provides significant benefits to Saal and the Trustee at the expense of, and to the detriment of, Appellant. (*See id.*). In other words, once the pre-bankruptcy Purchase Agreement was modified (by the Settlement Agreement between the Trustee and Saal), it was no longer capable of being assumed under section 365 and the Hotel could only be sold pursuant to the provisions of section 363 of the Bankruptcy Code. (*See id.* at 7).

Appellant explains that in addition to requiring competitive bidding, section 363 provides non-debtor co-owners such as herself a right of first refusal and a right to a *pro rata* distribution of sales proceeds according to her fifty percent interest in the Hotel. (*See id.* (citing sections 363(i) and 363(j))). The Bankruptcy Court's Assumption Order, according to Appellant, not only deprives her of the true value[11] of her fifty percent interest in the Hotel (which she asserts is far greater than what Saal will pay), it also precludes her from receiving her share of the additional $2,000,000 Saal has agreed to pay the estate under the Settlement Agreement between the Trustee and Saal. (*See id.* at 8–9).

Saal maintains that the Bankruptcy Court did not err when it allowed assumption of the Purchase Agreement under section 365. (*See Saal's Answer Brief* at 18). Saal argues that the Bankruptcy Court did not approve assumption of a *modified* pre-bankruptcy contract. Rather, the Court allowed the assumption of a pre-bankruptcy contract under section 365 in accordance with the terms of the contract, while at the same time approving a separate, but related, Settlement Agreement under

10. Bankruptcy Rule 9019(a) confers on bankruptcy courts the authority to approve a compromise or settlement and the "decision to approve a settlement is within [a bankruptcy court's] sound discretion." *See In re Air Safety Intern., L.C.,* 336 B.R. 843, 852 (S.D.Fla. 2005). To fulfill this duty, a bankruptcy court must determine whether the proposed settlement is fair and equitable. *Id.* In evaluating a proposed settlement, a bankruptcy court is not required to decide the merits of the various claims; rather, it must simply assess the probability of succeeding on those claims. *See In re Vazquez,* 325 B.R. 30, 35 (Bkrtcy. S.D.Fla.2005). Further, "in those instances in which a trustee's comprehensive examination of the underlying facts leads to the conclusion that further litigation will lead only to diminishing returns protracted investigation, or costly litigation with absolutely no 'guarantee as to the outcome.' an inquiring court is to afford the trustee 'wide latitude' " in deciding whether to enter into the settlement. *Id.* at 38 (quoting *In re Mailman Steam Carpet Cleaning, Corp.,* 212 F.3d 632, 635 (1st Cir. 2000)).

11. Elizabeth claims that the failure to provide for competitive bids at an auction is especially significant because the Hotel is now worth millions of dollars more than the purchase price under the Purchase Agreement the Bankruptcy Court permitted the Trustee to assume. (*See Appellant's Brief* at 6–7).

Bankruptcy Rule 9019, between the Trustee and Saal. (*See id.*).

Saal explains that the Settlement Agreement is a separate agreement to settle claims between Saal and the Trustee, entered into after the parties to it realized that it was in Saal's and the Trustee's best interests to move forward with the earlier Purchase Agreement of the Hotel and avoid endless and costly litigation. (*See id.* at 19). Saal contends that he and the Trustee concluded that if the Purchase Agreement were rejected by the Trustee, both parties would be involved in protracted and costly litigation involving the enforceability of the Purchase Agreement, Saal's enormous rejection damages claim, and other issues, including Saal's ability to "credit bid" at a subsequent section 363 bankruptcy auction. (*See id.*). In executing the Settlement Agreement, Saal acknowledged that, as the owner of several adjoining or near parcels, it was beneficial for him to acquire the Hotel. (*See id.*). Similarly, the Trustee maintains that because the Purchase Agreement is an executory contract, she properly exercised her right to assume the contract under section 365, notwithstanding the later Settlement Agreement with Saal, after concluding that it was in the best interest of the estate to assume the Purchase Agreement.

**E.  Assumption of the executory Purchase Agreement was proper under section 365.**

The undersigned is not aware of any reported case in this Circuit that has squarely addressed the issue presented here; whether section 365 applies to pre-bankruptcy executory contracts modified post-bankruptcy, or whether section 363 more properly applies. The parties do not cite to any such reported decision. (*See Appellant's Reply* at 4; *Trustee's Answer Brief* at 13).

To answer the question presented, the Court begins by construing section 365 of the Bankruptcy Code. One begins with the language of the statute itself because it is the language of the statute that controls. *See In re T.H. Orlando Ltd.*, 391 F.3d 1287, 1291 (11th Cir.2004); *see also City of Jamestown v. James Cable Partners, L.P.*, 27 F.3d 534, 536 (11th Cir.1994) ("The starting point in statutory interpretation is the language of the statute itself.") (citing *Gonzalez v. McNary*, 980 F.2d 1418, 1420 (11th Cir.1993)).

The first step of statutory construction is to determine whether the language of the statute, when considered in the context of the statute as a whole, is plain. *See Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1267–68 (11th Cir. 2006) (citing *Bautista v. Star Cruises*, 396 F.3d 1289, 1295 (11th Cir.2005)). If the language of the statute is unambiguous, courts are not required to look beyond the statutory language to determine the intent of the provision. *See United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir.1998) ("Where the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said."). To ascertain the plain meaning of the statute the Court is required to consider the statutory language at issue as well as the language and design of the statute as a whole. *See Wachovia Bank*, 455 F.3d at 1268. "The plain meaning canon of statutory construction applies with equal force when interpreting the Bankruptcy Code." *See In re Yates Development, Inc.*, 256 F.3d 1285, 1288–1289 (11th Cir.2001) (citations omitted); *see also CBS, Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1228–29 (11th Cir.2001) (explaining that only in the rare instance where a statute produces an absurd result,

should a court not apply a statute's plain meaning).

The language of section 365(a) does not appear to be ambiguous. It allows a trustee (except as is provided in other sections which are not applicable here), subject to court approval, to assume or reject any executory contract of the debtor. *See* 11 U.S.C. § 365(a). Under the plain words used, therefore, Sonya L. Salkin, trustee of Denis' estate, was permitted to assume executory contracts of Denis, so long as the Bankruptcy Court first approved the assumption. The Purchase Agreement, as an executory agreement between Denis and others, was an agreement the Trustee could assume with court approval.

The language of the statute becomes ambiguous, however, when applied to the present circumstances, given that it is silent on the effect, if any, of post-bankruptcy modifications to the executory contracts sought to be assumed. Thus, the undersigned proceeds to a consideration of the intent of the provision. Section 365 was included in the Bankruptcy Code to give a debtor the option of assuming contracts where performance by the non-bankrupt party will benefit the estate, or of rejecting contracts where further performance by the debtor will not benefit the estate. *In re Gencor Industries, Inc.*, 298 B.R. 902, 909 (Bkrtcy.M.D.Fla.2003) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6303; S.Rep. No. 989, 95th Cong., 2d Sess. 58 (1978). reprinted in 1978 U.S.C.C.A.N. 5787, 5844); *see also In re Circle K Corp.*, 127 F.3d 904, 909 (9th Cir.1997) (" '[t]he purpose behind § 365 is to balance the state law contract right of the creditor to receive the benefit of his bargain with the federal law equitable right of the debtor to have an opportunity to reorganize.' ") (quoting *Coleman Oil v. Circle K Corp. (In re Circle K )* 190 B.R. 370, 376 (9th Cir. BAP 1996)).

■ "[A] bankruptcy court reviewing a trustee's or debtor-in-possession's decision to assume or reject an executory contract [pursuant to § 365] should examine a contract and the surrounding circumstances and apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir.1993). Under the "business judgment rule," assumption is appropriate if the trustee can demonstrate that it will benefit the estate. *See Westship, Inc. v. Trident Shipworks, Inc.*, 247 B.R. 856, 866 (M.D.Fla.2000). The Bankruptcy Court reviewed the Purchase Agreement under the "business judgment" rule to determine whether it was in the best interest of Denis Chira's estate to assume the Purchase Agreement. *See In re Prime Motor Inns*, 124 B.R. 378 (Bkrtcy.S.D.Fla.1991) (applying the "business judgment" test when reviewing a debtor-in possession's motion to reject an executory contract).

The Bankruptcy Court reasoned that if the Trustee rejected the Purchase Agreement, the purchaser (Saal) could have a rejection claim with potential consequential damages that would likely exceed any gains made as a result of the Hotel being sold to a different buyer today, at a higher price. (R. 154, pp. 7–8). The Bankruptcy Court also considered the additional $2,000,000 the purchaser agreed to pay the estate under the subsequent Settlement Agreement. (*See* R. 154. pp. 7–8). Under these circumstances, the court determined that assumption of the Purchase Agreement was in the best interest of the estate. Assumption of the Purchase Agreement, therefore, appears consistent with the purposes of section 365.

The fact that there is a subsequent and separate Settlement Agreement executed by the Trustee and Saal, which is also approved, does not preclude the Trustee's

assumption of the Purchase Agreement, and section 365 does not expressly contain such prohibition. Although not directly on point, the following cases contain analyses that compel the conclusion here that approval of the requested assumption was properly given the Trustee under section 365.[12]

In *Richmond Leasing Co. v. Capital Bank, N.A.*, the Fifth Circuit did not specifically address the interplay between sections 365 and 363 of the Code, or when one statutory section should be applied in the sale of real property to the exclusion of the other. 762 F.2d 1303, 1310–1312 (5th Cir. 1985). The court did, however, examine the effect of post-bankruptcy modifications made to an executory contract in the context of section 365.

In *Richmond Leasing*, the Fifth Circuit affirmed the lower court's approval of the assumption of a modified lease agreement under section 365. The debtor-in-possession in *Richmond Leasing* was in the business of leasing railroad cars. The lease in question was executed on June 1, 1982, but before the first payment was due under the lease, the debtor-in-possession filed its petition in bankruptcy. *Id.* at 1307. A few months later, in April of 1983, the debtor and the lessor requested court approval of a renegotiated lease that the debtor proposed to assume. *Id.*

Subsequently, bank creditors objected to the assumption of the modified agreement on the basis that sect on 365 did not allow for the modifications to the original lease. The *Richmond Leasing* court rejected the creditors' objections and emphasized that

"the often-repeated statement that the debtor must accept the contract as a whole means only that debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement." *Id.* at 1311 (citations omitted). The court further noted that the other party to the agreement cannot "hold out for concessions from the debtor beyond those required to provide adequate assurance." *Id.* (citing *In re Holland Enterprises, Inc.*, 25 B.R. 301 (E.D.N.C.1982); *In re LHD Realty Corp.*, 20 B.R. 717 (Bankr.S.D.Ind.1982); *In re Lafayette Radio Electronics Corp.*, 9 B.R. 993, 998 (Bankr.E.D.N.Y.1981)).

The *Richmond Leasing* court recognized the modifications made to the original lease as a way of assuring the other party to the agreement that the debtor would perform its guarantee; the modifications constituted the debtor's "offer of adequate assurance of future performance." *Id.* (citing *In re Kennesaw Dairy Queen Brazier*, 28 B.R. 535, 536 (Bankr. N.D.Ga.1983) (noting that certain modifications may be allowed under section 365 and emphasizing that "[t]he fact that debtors may cure defaults and reinstate contracts or leases [ ] is perhaps the clearest example of the modification of an executory contract or expired lease.")). The court concluded that the debtor's modifications to the lease agreement were consistent with the requirements of section 365, and assumption of the modified lease agreement under that section was therefore appropriate. *Id.*

---

**12.** Because there is no binding caselaw on this issue, the Court looks to other circuits for guidance. *See, e.g., In re Mulvania*, 214 B.R. 1, 9 (9th Cir. BAP 1997) (cautioning against creating intercircuit conflicts, especially when a lower federal court is addressing an issue already decided by another circuit court); *In re Berg*, 188 B.R. 615, 620 (9th Cir. BAP 1995), *aff'd*, 121 F.3d 535 (9th Cir.1997) (noting that consistent application of federal law is an important goal, and a lower federal court should only deviate under compelling circumstances from the interpretation placed on a federal statute by the only circuit to have spoken).

In *City of Covington v. Covington Landing Limited,* 71 F.3d 1221, 1226 (6th Cir. 1995), the court approvingly cited the *Richmond Leasing* court's finding that section 365 does not preclude modifications of an assumed contract when the modifications do not "excise material obligations owing to the non-debtor contracting party." In that case, the City of Covington appealed the district court's order affirming a bankruptcy court's ruling that allowed the assumption of a modified lease agreement under section 365. The *Covington* court rejected the City's contention that pursuant to section 365, the lease agreement assumed could not be modified. The court found that section 365 did not limit the debtor's ability to assume or reject an agreement with all its benefits and burdens intact. *See id.* Further, in rendering its decision, the court emphasized that under the modified agreement, the City's benefits (afforded under the original agreement) remained. *Id.* at 1228.

The *Richmond Leasing* and *Covington* courts' analyses of the applicability of section 365 to pre-bankruptcy contracts subsequently modified compels the conclusion here that it was not error for the Bankruptcy Court to approve the Trustee's assumption of the pre-bankruptcy Purchase Agreement under section 365. Although Elizabeth is not a party to the later Settlement Agreement, that later agreement does not modify Elizabeth's rights and obligations under the Purchase Agreement. It requires more of the purchaser and gives more to the estate, while leaving Elizabeth unaffected. In other words, the Settlement Agreement was not executed by the Purchaser and the Trustee "to the detriment" of Elizabeth. *Id.; see also Richmond Leasing,* 762 F.2d at 1311.

The later Agreement addresses, in part, costs associated with enforcement of the Purchase Agreement and constitutes the Trustee's and Saal's efforts to assure that title passes to Saal as envisioned by the parties (including Elizabeth) under the Purchase Agreement. The Settlement Agreement, like the modified lease agreement in *Richmond Leasing,* is an attempt to assure the debtor's future performance under the Purchase Agreement. *Id.* Elizabeth will receive all that she is entitled to under the Purchase Agreement, no more and no less. Under these circumstances, and based on the foregoing considerations of the language of and intent behind section 365, and other courts' analogous and persuasive analyses of the effect of later amendments to contracts otherwise subject to section 365, the undersigned finds no error in the order allowing assumption of the Purchase Agreement under section 365. *Id.*

Given this conclusion, the undersigned also finds that the Bankruptcy Court was not obligated to apply section 363 to effectuate the sale of the Hotel. In the context of executory contracts, courts have recognized section 365 as the exclusive remedy available to parties wishing to sell property or other assets of the estate. In the case of *In re Taylor,* for example, the debtor-lessor sought to sell a property interest pursuant to section 363(f) of the Bankruptcy Code. 198 B.R. 142 (Bkrtcy. D.S.C.1996). In rejecting the debtor-lessor's request for approval of a property sale, and removal of unexpired leases on the property under section 363(f), the *Taylor* court noted that in the context of executory leases, section 365 was the exclusive remedy available. *Id.* at 164–65. The court found " § 365 is the necessary avenue which this Debtor must follow before this Court could authorize a transfer of the real property ... leased." *Id.* at 167.

The Bankruptcy Court was not required to apply section 363 in the sale of the Hotel and did not err when it permitted the sale under section 365. *See, e.g., In re*

*Qintex Entertainment, Inc.* 950 F.2d 1492, 1495–96 (9th Cir.1991) (denying the sale of assets under section 363 because it involved executory contracts which the court determined had to be assumed or rejected as provided in section 365); *In Robinson Truck Line, Inc.,* 47 B.R. 631, 638 (Bkrtcy. N.D.Miss.1985) (recognizing section 365 as the exclusive remedy in the context of executory contracts); *In re LHD Realty Corp.,* 20 B.R. 717, 719 (Bkrtcy.S.D.Ind. 1982) (noting that Congress' intent in enacting section 365 was to make that section the exclusive remedy to a debtor in an executory lease situation).

In light of the foregoing analysis, it is hereby

**ORDERED AND ADJUDGED** that the Order on Trustee's Motion to Assume Executory Contract for Sale of Real Property and to Settle Dispute is **AFFIRMED**. The Clerk of the Court is instructed to **CLOSE** the case and all pending motions are **DENIED AS MOOT**. It is

**FURTHER ORDERED AND ADJUDGED** that the parties shall advise the Court, within **ten calendar days** from the date of this Order, as indicated in the Court's prior orders in case numbers 07–60049–Civ [D.E. 3], 07–60199–Civ [D.E. 5], and 07–60402 [D.E. 5], whether they wish to re-open all related cases, and if so, propose a briefing schedule.