**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN THE MATTER OF: MORTGAGES LTD., *Debtor*, | No. 12-15234 |
| | D.C. Nos. 2:09-cv-02698-RCJ 2:08-bk-07465-RJH |
| REV OP GROUP; STERNBERG ENTERPRISES PROFIT SHARING PLAN, *Appellants*, v. ML MANAGER LLC, *Appellee*. | |

| | |
|---|---|
| REV OP GROUP, *Appellant*, v. ML MANAGER LLC, *Appellee*. | No. 12-15459 |
| | D.C. No. 2:11-cv-00200-RCJ |
| | OPINION |

Appeal from the United States District Court
for the District of Arizona
Robert Clive Jones, District Judge, Presiding

Argued and Submitted
January 16, 2014—San Francisco, California

Filed November 12, 2014

Before: J. Clifford Wallace and Jay S. Bybee, Circuit
Judges, and Robert W. Gettleman, Senior District Judge.*

Opinion by Judge Wallace

**SUMMARY**[**]

**Bankruptcy**

The panel dismissed, as equitably moot, appeals from two bankruptcy court orders in a Chapter 11 case.

Pursuant to the confirmed plan of reorganization of Mortgages Ltd., a private lender for certain real estate investments in Arizona, ML Manager LLC was the manager of the loans left in Mortgages Ltd.'s portfolio. Mortgages Ltd. raised money from investors to extend loans to real estate purchasers, secured by the purchased real estate, and acted as servicing agent for the loans and properties. The investors received pass-through fractional interests in the real

---

[*] The Honorable Robert W. Gettleman, Senior District Judge for the U.S. District Court for the Northern District of Illinois, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

estate that secured the loans and the resulting loan payments. They acquired an actual interest in each underlying loan.

Rev Op Group, a group of pass-through investors, moved for an order ruling that ML Manager could not act as agent for their interests, and that objecting investors like Rev Op Group should not be obliged to pay any share of an exit financing loan taken by ML Manager to pay for expenses related to the completed bankruptcy. The bankruptcy court rejected both arguments in a "Clarification Order." The bankruptcy court also issued a "Distribution Order" approving ML Manager's distribution of the proceeds of its liquidation of the loan portfolio.

The panel held that Rev Op Group's appeals from the Clarification Order and the Distribution Order were equitably moot because the Group did not seek a stay before the bankruptcy or district courts, as required by *In re Roberts Farms, Inc.*, 652 F.2d 793 (9th Cir. 1981). In addition, substantial consummation of the Chapter 11 plan had occurred, the remedy Rev Op Group sought would inequitably harm third parties, and the bankruptcy court on remand would not be able to devise an equitable remedy.

---

## COUNSEL

Bryce A. Suzuki (argued), Robert J. Miller, and Justin A. Sabin, Bryan Cave LLP, Phoenix, Arizona, for Appellants.

Cathy L. Reece (argued), Fennemore Craig, P.C., Phoenix, Arizona; Keith L. Hendricks and Joshua T. Greer, Moyes Sellers & Hendricks, Phoenix, Arizona, for Appellee.

## OPINION

WALLACE, Senior Circuit Judge:

Mortgages Ltd. was a private lender for certain real estate investments in Arizona. Mortgages Ltd. raised money from investors to extend loans to real estate purchasers, secured by the purchased real estate, and acted as servicing agent for the loans and properties. The investors received "pass-through" fractional interests in the real estate that secured the loans and the resulting loan payments. The pass-through investors acquired an actual interest in each underlying loan.

On June 24, 2008, Mortgages Ltd. filed for Chapter 11 bankruptcy. The company was restructured through a confirmed bankruptcy plan. Pursuant to that plan, the entity ML Manager LLC (ML Manager), the appellee here, manages and operates the loans left in Mortgages Ltd.'s portfolio. ML Manager took a $20 million loan in "exit financing" to pay for expenses related to the completed bankruptcy. The bankruptcy plan was confirmed by the bankruptcy court in May 2009.

After confirmation, a group of the pass-through investors (Rev Op Group) moved for an order in the bankruptcy court ruling that ML Manager could not act as agent for their interests, and that objecting investors like the Rev Op Group should not be obligated to pay any share of the exit financing loan. The bankruptcy court rejected both arguments in its "Clarification Order," issued on October 21, 2009. Rev Op Group appealed to the district court, which affirmed on January 31, 2012.

Relying on the confirmed plan, the Clarification Order and other decisions of the bankruptcy court, ML Manager began liquidating the loan portfolio. As liquidation proceeds became available, ML Manager filed an "Allocation Model" on September 1, 2010, to allocate costs and distribute the proceeds to investors. Rev Op Group objected to the model and the proposed distributions of funds, but the bankruptcy court provisionally overruled these objections. ML Manager filed a notice of its intent to distribute proceeds according to the allocation model and a motion to approve the distributions. Rev Op Group objected to the motion. On January 20, 2011, the bankruptcy court issued its "Distribution Order" overruling the objections and granting ML Manager's motion to approve the distributions. Rev Op Group appealed to the district court, which affirmed the order on November 4, 2011.

Rev Op Group timely appealed from the district court's affirmances of the Clarification and Distribution Orders to this court.[1] We have appellate jurisdiction under 28 U.S.C. § 158(d)(1).

The bankruptcy court twice overruled Rev Op Group's objections, and the district court twice affirmed these orders. However, Rev Op Group never sought to stay the bankruptcy or district court decisions pending the appeals. As a result, ML Manager moves this court to dismiss the appeals as

---

[1] In a separate opinion filed with this Opinion, we address Rev Op Group's appeal from the bankruptcy court's Declaratory Judgment. *Rev Op Grp. v. ML Manager LLC*, Nos. 12-15229, 12-15438, 12-16293 & 12-16725. In a concurrently filed memorandum disposition, we resolve three other appeals from bankruptcy court sales orders. *Rev Op Grp. v. ML Manager LLC*, Nos. 12-15229, 12-15438, 12-16293 & 12-16725.

equitably moot. The district court denied ML Manager's motions to dismiss on this basis, but did affirm the bankruptcy court's rulings on substantive grounds.

We review factual findings about mootness for clear error. *In re Thorpe Insulation Co.*, 677 F.3d 869, 879 (9th Cir. 2012). We review legal conclusions de novo. *Id.* But as we explain later, ML Manager is also entitled to move to dismiss in this court based on equitable mootness, regardless of the decisions of the courts being reviewed. The "party moving for dismissal on mootness grounds bears a heavy burden." *Id.* (citation omitted).

## I.

The district court denied ML Manager's motions to dismiss these appeals on equitable mootness grounds. Instead of cross-appealing those denials, ML Manager requests that we dismiss the appeals. Rev Op Group argues that ML Manager waived its right to move to dismiss because of the failure to cross-appeal.

This is incorrect. A party can move to dismiss an appeal as equitably moot if "great changes in the status quo occurred after the district court rendered the orders appealed from," even if the party *never* moved to dismiss the appeal as moot before the district court. *Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421, 1423 (9th Cir. 1985). ML Manager argues that the distributions and other actions taken in the wake of the district court orders have greatly changed the status quo. Also, no cross-appeal is required for an argument that supports the appealed judgment, "even where the argument being raised has been explicitly rejected by the district court." *Engleson v. Burlington N. R.R. Co.*, 972 F.2d 1038, 1041 (9th

Cir. 1992). We thus consider ML Manager's motions to dismiss despite its failure to cross-appeal.

## II.

We therefore turn to ML Manager's requested dismissal of Rev Op Group's appeals as moot. As we explained in *Thorpe*, a bankruptcy appeal can be moot in two circumstances. 677 F.3d at 880. The first derives from Article III of the Constitution, the other from equity.

Federal courts can only rule on cases or controversies under Article III of the Constitution. U.S. Const. art. III, § 2, cl.1. If an appeal is constitutionally moot under Article III, we are powerless to hear it. These appeals are not constitutionally moot because we "can give the appellant any effective relief in the event that [we] decide[] the matter on the merits in [its] favor." *Thorpe*, 677 F.3d at 880 (citations omitted). We could entirely "reverse plan confirmation or require modification of the plan." *Id.*

Even when we *could* entirely reverse plan confirmation or wholly modify the plan, and thus the appeals are not constitutionally moot, we can dismiss appeals of bankruptcy matters when there has been a "comprehensive change of circumstances . . . so as to render it inequitable for this court to consider the merits of the appeal." *Id.* (internal quotation marks and citation omitted). We call this "equitable mootness," a "judge-made abstention doctrine" unrelated to the constitutional prohibition against hearing moot appeals. *See, e.g.*, *In re Semcrude, L.P.*, 728 F.3d 314, 317 & n.2 (3d Cir. 2013); *In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994) ("[t]here is a big difference between *inability* to alter the outcome (real mootness) and *unwillingness* to alter the

outcome ('equitable mootness')").**[2]** An appeal is equitably moot if the case presents "transactions that are so complex or difficult to unwind" that "debtors, creditors, and third parties are entitled to rely on [the] final bankruptcy court order." *Thorpe*, 677 F.3d at 880 (citation omitted).

A party that disagrees with an order of a bankruptcy judge can move to stay the order before that bankruptcy judge, who has the power to suspend the order or offer other appropriate relief during the pendency of an appeal of the order, to protect the rights of all parties in interest. FED. R. BANKR. P. 8005.**[3]** The bankruptcy court can condition granting the stay on payment of a supersedeas bond. *Id.* If the bankruptcy judge does not grant the stay, the objecting party can seek a stay from the district court or bankruptcy appellate panel, which can also grant a stay and condition the stay on payment of a bond or other security. *Id.* The stay ensures "that the estate and the status quo may be preserved pending resolution of the appeal." *In re Chateaugay Corp.*, 988 F.2d 322, 326 (2d Cir. 1993).

---

**[2]** We have at times referred to equitable mootness as a jurisdictional bar. *See, e.g.*, *In re Baker & Drake, Inc.*, 35 F.3d 1348, 1351 (9th Cir. 1994) (stating that equitable "[m]ootness is a jurisdictional issue"). But the correct approach, as we recognized in *Thorpe*, is that equitable mootness is a prudential doctrine whereby we elect not to entertain certain bankruptcy appeals.

**[3]** After argument in this case, the Chief Justice submitted to Congress amendments to the Federal Rules of Bankruptcy Procedure that change and renumber Rule 8005. Those rules go into effect "December 1, 2014, and shall govern in all proceedings in bankruptcy cases thereafter commenced." Proposed Amendments to the Federal Rules of Bankruptcy Procedure, *available at* 2014 US ORDER 0011 (Apr. 25, 2014).

When an appellant fails to seek a stay without giving adequate cause, we have held that we dismiss the appeal as equitably moot. *In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir. 1981) ("[a]ppellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court and have permitted such a comprehensive change of circumstances to occur as to render it inequitable for this court to consider the merits of the appeal. . . . Appellants flunked the first step. They did not apply to the bankruptcy judge for a stay . . . and have given no adequate reason on the record for not doing so"); *see also Thorpe*, 677 F.3d at 881 (stating that "[w]e will look first at whether a stay was sought, for absent that a party has not fully pursued its rights," and that the "failure to seek a stay can render an appeal equitably moot"). We have not consistently followed this helpful and clear rule, though, and have held in at least two cases that, in the instances there described, an appeal is not equitably moot despite the failure to seek a stay. *See, e.g.*, *Suter v. Goedert*, 504 F.3d 982, 990 (9th Cir. 2007); *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1074 (9th Cir. 2002).

A.

In *Roberts Farms*, we held that before we analyze any of the other factors regarding equitable mootness, the "first step" is whether the appellant "appl[ied] to the bankruptcy judge for a stay" or gave an "adequate reason on the record for not doing so." 652 F.2d at 798. "[I]t is obligatory upon [the] appellant in a situation like the one with which we are faced to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." *Id.* While we recognized in

*Thorpe* that an appeal should not be automatically dismissed for failure to *obtain* a stay, we reiterated our warning from *Roberts Farms* that an appellant must *seek* a stay. 677 F.3d at 881. Otherwise, we stated, the appellant has by definition "not fully pursued its rights," and thus the appeal is subject to dismissal. *Id.*

We have not consistently followed the clear *Roberts Farms* rule. On at least two occasions, we denied motions to dismiss appeals despite appellants' failures to seek stays of bankruptcy orders. *See, e.g.*, *Suter*, 504 F.3d at 990; *Sylmar*, 314 F.3d at 1074. There is tension between *Roberts Farms* on the one hand and *Suter* and *Sylmar* on the other. The bankruptcy appellate panel has recognized that tension. *In re Cmty. Bancorp*, 2013 WL 4441925, at *13 (B.A.P. 9th Cir. Aug. 20, 2013) (stating that *Sylmar* rejected a motion to dismiss as equitably moot based solely on the failure to seek a stay, but that under *Thorpe*, "failure to seek a stay may alone be enough to render these appeals equitably moot," and thus recognizing that "[c]learly, an inconsistency exists between *Sylmar* and *Thorpe*").

## B.

It would appear that the best way to resolve any inconsistency would be to cabin *Sylmar* and *Suter* as narrow exceptions to the general rule, from *Roberts Farms*, that appeals from orders where the objecting party did not seek a stay are moot. Our requirement that a party seek a stay of a bankruptcy court order with which it disagrees before appeal is grounded in important principles of equity. Bankruptcy cases often implicate parties besides the debtor and its creditors. For example, the estate may sell or dispose of its property, or borrow money from a lender. As seen in these

appeals, the estate usually does so pursuant to orders from the bankruptcy court. When a party that disagrees with an order of the bankruptcy court seeks a stay of the order, it notifies third parties that the transactions they might enter into with the estate may be undone on appeal. If the disagreeing party fails to seek a stay, any third parties who purchased property or extended a loan may later have a transaction undone without sufficient notice. This inequitable result means that "the appellant has a high obligation to seek a stay pending appeal, even if the chances of success seem dim." 13B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *et al.*, FED. PRAC. & PROC. JURIS. § 3533.2.3 (3d ed.). Obviously, if the disagreeing party succeeds in obtaining a stay, it is impossible for third parties to enter into transactions with the estate, which means that no inequitable results could ensue.

Under this interpretation of our case law, these consolidated appeals are moot. Rev Op Group never moved to stay the appealed orders before the bankruptcy or district courts. According to *Roberts Farms*, we should dismiss these appeals as equitably moot unless Rev Op Group offers "adequate reason" for its failure to seek a stay. 652 F.2d at 798.

Rev Op Group argues that it was "financially unable to post the extremely expensive bond that would be required," advising that in two related appeals from the Mortgages Ltd. bankruptcy, ML Manager sought a prohibitively expensive $90 million bond. But this is not an adequate reason for failing *to seek a stay* of the Clarification and Distribution Orders. First, ML Manager sought the $90 million bond for different orders. We cannot assess whether ML Manager would have requested a more affordable bond for stays of the Clarification and Distribution Orders. Second, it is the

bankruptcy and district courts, following Federal and Local Rules, that determine the precise amount of the bond, not the debtor or its agent. *In re Swift Aire Lines, Inc.*, 21 B.R. 12, 13–14 (B.A.P. 9th Cir. 1982); *accord In re Tribune Co.*, 477 B.R. 465, 480–83 (Bankr. D. Del. 2012) (closely analyzing a number of factors to quantify "the potential harm for the purpose of fixing the amount of a bond"). The bankruptcy court may have viewed stays for the Clarification and Distribution Orders differently than the stays sought for the other orders. Third, our precedents were quite clear at the time of the Clarifiation and Distribution Orders that an objecting party must at least seek a stay to ensure its appeal will not be equitably moot. *See, e.g.*, *In re Lowenschuss*, 170 F.3d 923, 933 (9th Cir. 1999).

Thus, Rev Op Group's appeals must be dismissed for mootness under *Roberts Farms* because of its failure to seek stays of the Clarification and Distribution Orders. This is a clear bright-line rule that all litigants can understand.

Even if we were to extend our analysis beyond *Roberts Farms* to cases in "tension" with it, *Suter* or *Sylmar*, Rev Op Group would still not prevail. Unlike in *Suter*, Rev Op Group has never argued that it has a right under Arizona state law to return to the status quo after the distributions and allocations made pursuant to the Clarification and Distribution Orders. *See Suter*, 504 F.3d at 990 ("[t]his exception to mootness exists when the debtor had a state statutory right to redeem real property sold to a creditor or other purchaser"). Nor is Rev Op Group solely seeking monetary damages from a solvent debtor. *Sylmar*, 314 F.3d at 1074. Any relief we grant to Rev Op Group would require overturning previous distributions and allocations to third parties not before this

court. Unlike in *Sylmar*, then, we cannot simply award Rev Op Group more money from a stable pool of available funds.

### C.

But as a three-judge panel, we cannot resolve the tension in our case law because doing so requires overruling prior decisions of this court. *In re Complaint of Ross Island Sand & Gravel*, 226 F.3d 1015, 1018 (9th Cir. 2000). There is no need to resolve the tension here because Rev Op Group's appeals must be dismissed under the four considerations from *Thorpe*, even if the failure to seek stays of the Clarification and Distribution Orders were not fatal. Those four considerations are: (1) "whether a stay was sought, for absent that a party has not fully pursued its rights"; (2) "if a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred"; (3) "we will look to the effect that a remedy may have on third parties not before the court"; (4) "[f]inally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation before the bankruptcy court." 677 F.3d at 881.

As we have previously explained at length, Rev Op Group failed to satisfy the first *Thorpe* consideration because it did not seek a stay. By doing so, Rev Op Group did not "use due diligence in seeking the stay," and has, "by its own inaction" "permit[ted] developments to proceed without its participation," namely, distributions of funds from ML Manager to unsuspecting third parties who could not have realized the distributions could be retaken. *Id.* This is a case where Rev Op Group sat on its rights, which weighs strongly towards equitable mootness. *Thorpe*, 677 F.3d at 881–82; *see*

*also Nordhoff Invs., Inc. v. Zenith Elec. Corp.*, 258 F.3d 180, 187 (3d Cir. 2001) (determining that "Appellants did not, at any time, seek a stay . . . [which] weighs heavily in favor of dismissing Appellants' claims").

Moreover, in addition to the fact that substantial consummation of the bankruptcy plan has occurred,[4] the remedy Rev Op Group seeks "would bear unduly on the innocent." *Thorpe*, 677 F.3d at 882. That turns on whether it is possible to alter the Clarification and Distribution Orders "in a way that does not affect third party interests to such an extent that the change is inequitable." *Id.* Any alterations would inequitably harm third parties not before this court. Third parties would have to return distributions from the estate or sell property back to ML Manager. Because the bankruptcy proceeding is, in substance, a liquidation, any increase in future distributions to Rev Op Group must come from money allocated to and expected by a third party investor. Any modification to the underlying orders would inequitably affect those third parties.

Finally, "and most importantly, we look to whether the bankruptcy court on remand may be able to devise an equitable remedy." *Id.* at 883. It is not possible to devise an equitable remedy. While the bankruptcy court could withhold proceeds from future property sales and reallocate those proceeds based on a revised formula, because many investors have likely already received all of the distributions owed to them, withholding the proceeds of future sales would not allow the bankruptcy court to reallocate the money proportionally. Clawing back money from those investors

---

[4] See Section I.2 of the concurrently filed Opinion in *Rev Op Grp. v. ML Manager LLC*, Nos. 12-15229, 12-15438, 12-16293 & 12-16725.

who already paid their full allocation would be either impossible or inequitable. Even if these steps were possible, the costs of implementing such a remedy would probably exceed the amount of redistributed funds.

Thus, whether Rev Op Group's failure to seek a stay is fatal under *Roberts Farms*, standing alone, or whether we must assess this appeal under *Thorpe*, the appeals must be dismissed.[5]

**APPEALS DISMISSED.**

---

[5] Rev Op Group requests that we vacate the underlying orders because these appeals are now moot, under *In re Burrell*, 415 F.3d 994 (9th Cir. 2005). However, "the touchstone of vacatur is equity," and it would be inequitable to allow Rev Op Group to relitigate the underlying issues in these appeals. *Id.* at 999 (citation omitted). Indeed, unlike in *Burrell*, here Rev Op Group "has by [its] own act caused the dismissal of the appeal" by its failure to seek stays of the Clarification and Distribution Orders. *Id.* (citation omitted).