FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE POINT CENTER FINANCIAL, INC., *Debtor*, | No. 18-56398 <br><br> D.C. No. 8:16-cv-01336-DSF |
| DAN J. HARKEY; ROBIN B. GRAHAM; CELIA ALLEN-GRAHAM; RICHARD SCHACHTER, as Trustees of the Robin B. Graham and Celia Allen-Graham Revocable Trust, *Appellants*, <br><br> v. <br><br> HOWARD B. GROBSTEIN, Chapter 7 Trustee, *Appellee.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted February 4, 2020
Pasadena, California

Filed April 29, 2020

Before: Sandra S. Ikuta and Morgan Christen, Circuit
Judges, and Algenon L. Marbley,[*] District Judge.

Opinion by Judge Marbley;
Partial Concurrence and Partial Dissent by Judge Christen

## SUMMARY[**]

### Bankruptcy

The panel affirmed the district court's order affirming the bankruptcy court's judgment authorizing a Chapter 7 trustee to exercise management rights over and to assume the operating agreement with a limited liability company created to hold title to foreclosed property securing investments by private investors in the debtor.

The panel held that appellants, the former principal of the debtor and members of the limited liability company, Dillon Avenue 44, LLC, had standing to appeal because they were pecuniarily affected by the bankruptcy court's order.

The panel held that the bankruptcy court had subject matter jurisdiction to confirm Dillon members' vote establishing the Chapter 7 trustee as manager of Dillon and to hear the trustee's assumption motion. The panel held that the trustee's failure to assume the operating agreement by

---

[*] The Honorable Algenon L. Marbley, United States Chief District Judge for the Southern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the bankruptcy court's deadline did not deprive the court of jurisdiction over matters relating to the Dillon operating agreement, which was part of the bankruptcy estate. Further, under 11 U.S.C. § 1334(b), the bankruptcy court had "arising under" and "related to" jurisdiction to rule on the trustee's assumption motion.

The panel held that the bankruptcy court properly authorized the trustee to exercise management rights over Dillon after the majority of Dillon's members voted for the trustee to manage Dillon. The bankruptcy court had jurisdiction and was within its authority to confirm the trustee's election as manager of Dillon.

The panel held, in Section III(d) of its opinion, that the bankruptcy court properly extended its own deadline for assumption of the operating agreement pursuant to Fed. R. Bankr. P. 9006(b)(1)(2) and did not run afoul of 11 U.S.C. § 365(d)(1), which establishes a statutory 60-day deadline for assuming or rejecting executory contracts. The panel reasoned that § 365(d)(1) permits the bankruptcy court to grant a trustee additional time for cause within that 60-day period, and the bankruptcy court did so. Thus, when the bankruptcy court extended the deadline again, it was extending a period specified by court order, not extending a deadline mandated by statute.

The panel declined to reach the question of equitable mootness.

Judge Christen concurred in part and dissented in part. She concurred in the result reached by the majority and agreed with the majority's conclusion that appellants had standing to pursue this appeal, and that the bankruptcy court had jurisdiction pursuant to § 1334(b). Judge Christen

disagreed with the majority's decision that the bankruptcy court permissibly reopened the statutory period for the trustee to accept Dillon's operating agreement, and she did not join Section III(d) of the majority's opinion. She wrote that she would affirm the district court's alternative holding that the appeal of the bankruptcy court's order was equitably moot.

## COUNSEL

Sean A. O'Keefe (argued), O'Keefe & Associates Law Corporation P.C., Newport Beach, California, for Appellants.

Roger M. Landau (argued) and Roye Zur, Landau Law LLP, Los Angeles, California, for Appellee.

## OPINION

MARBLEY, District Judge:

On October 9, 2018, the district court entered an order affirming the June 29, 2016 judgment of the bankruptcy court that granted a motion by Howard Grobstein, the Chapter 7 Trustee and Appellee, authorizing the Trustee to exercise management rights over Dillon Avenue 44, LLC ("Dillon"), and authorizing the Trustee's assumption of the operating agreement with Dillon. Dillon is a limited liability company created to hold title to foreclosed property securing investments by private investors in Point Center Financial. Appellants are the former principal of Point Center Financial, the debtor, and members of Dillon.

Appellants argue that the bankruptcy court lacked jurisdiction to extend the deadline for accepting or rejecting the operating agreement and to issue an order approving the election of the Trustee as manager of Dillon. Appellants base their argument on the premise that the expiration of the deadline two years earlier constituted a statutory rejection of the agreement, and rendered the agreement no longer property of the estate. In addition to their jurisdictional arguments, Appellants argue that the bankruptcy court did not have authority to modify its own final order under Fed. R. Bankr. P. 9006(b).

Appellee argues Appellants do not have standing to bring this appeal because they are not pecuniarily harmed by the bankruptcy court's order. Appellee further argues that the appeal is equitably moot because the Trustee has substantially completed the wind-down of Dillon.

The district court rejected Appellants' jurisdictional and statutory arguments and affirmed the bankruptcy court's order. This appeal followed. We **AFFIRM**.

## I.  BACKGROUND

### A.  Relevant Facts

Debtor Point Center Financial, Inc. (PCF) was in the business of originating and servicing loans by private investors. PCF would obtain funding from private investors secured by real property. Investors received either fractionalized interest in the deeds of trust securing their investments or investment in a blind mortgage pool in return for funding. When loans began to default following the recession in 2008, PCF foreclosed on the property securing the loans and would create a limited liability company ("LLC") to hold title to the property. Investors' interests

were commonly converted to membership interests in the LLC. Dillon Avenue 44, LLC ("Dillon") was one such LLC that held title to undeveloped property in Indio, California. Appellants are PCF's former principal and some of Dillon's members.

## B. History

On February 19, 2013, PCF filed a petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of California.

On August 13, 2013, the bankruptcy court entered an order appointing Howard Grobstein as PCF's Chapter 11 Trustee. The case was converted to a Chapter 7 Bankruptcy, and Grobstein became the Chapter 7 Trustee.

On December 24, 2013, the Trustee moved for the bankruptcy court to extend the deadline set forth in 11 U.S.C. § 365 for him to assume or reject executory contracts. On January 30, 2014, the bankruptcy court granted the Trustee's motion and set February 28, 2014 as the deadline for the assumption or rejection of most executory contracts, including the operating agreement with Dillon. The Trustee did not assume the operating agreement by the deadline because Dan Harkey, PCF's former principal, had falsely represented that no sale of real estate owned by Dillon was imminent. On May 31, 2016, the Trustee filed a motion seeking an order authorizing the Trustee to exercise management rights over Dillon based on his election as manager by Dillon's members, and alternatively for an order permitting him to assume Dillon's operating agreement. The Trustee argued that his failure to assume the operating agreement by the February 28, 2014 deadline was the result of "excusable neglect" under Fed. R. Bankr. P. 9006(b)

given Harkey's dishonest "representations that there was no sale of Dillon's real property on the horizon, and therefore no reasonable likelihood that the estate could recover . . . millions of dollars." A hearing was set on the assumption motion for June 21, 2016, and Appellants failed to appear, claiming they failed to understand the threat to their rights under the motion. They filed an emergency motion for reconsideration on June 28, 2016, contending the bankruptcy court lacked jurisdiction. The district court denied this motion, concluding that Appellants filed no written opposition to the assumption motion, offered no newly discovered evidence, and demonstrated no other highly unusual circumstances that would warrant reconsideration.

On June 29, 2016, the bankruptcy court issued an order granting the Chapter 7 Trustee's motion authorizing the Trustee to exercise management rights over Dillon and authorizing the Trustee's assumption of the operating agreement ("Assumption Order"). The Trustee sold the real property belonging to Dillon and distributed the proceeds to creditors, PCF, and Dillon members under a plan approved by the bankruptcy court.

On October 9, 2018, the Central District of California affirmed the bankruptcy court's Assumption Order, holding the bankruptcy court had jurisdiction to hear the assumption motion and approve the Dillon membership vote, and properly extended its own deadline pursuant to Fed. R. Bankr. P. 9006(b). Appellants filed a notice of appeal to this Circuit on October 19, 2018.

## II.  JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear appeals from the district court pursuant to 28 U.S.C. § 1291. This Court generally "review[s] de novo a district court's decision on

appeal from a bankruptcy court," and "review[s] a bankruptcy court decision independently and without deference to the district court's decision." *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010). Findings of fact of the bankruptcy court are reviewed for clear error, and conclusions of law are reviewed de novo. *Id.* (citing *In re Strand*, 375 F.3d 854, 857 (9th Cir. 2004)). Mixed questions of law and fact are reviewed de novo. *Id.* (citing *In re Chang*, 163 F.3d 1138, 1140 (9th Cir. 1998).

The question of a bankruptcy court's jurisdiction is a question of law reviewed de novo. *In re Marciano*, 459 B.R. 27, 34 (B.A.P. 9th Cir. 2011). The question of the statutory construction of Fed. R. Bankr. P. 9006 is also a question of law reviewed de novo. *In re Simpson*, 557 F.3d 1010, 1014 (9th Cir. 2009).

Appellee argues that the standard of review of the bankruptcy court's order is plain error because Appellants forfeited their opposition to the Assumption Motion by failing to appear at the underlying hearing at the bankruptcy court. In its May 29, 2018 Order, this Court found Appellants had not waived their challenge to the Assumption Order but found "the question of forfeiture is open for determination on remand." *Matter of Point Ctr. Fin., Inc.*, 890 F.3d 1188, 1193 (9th Cir. 2018). In a footnote, the district court noted it "affirms the bankruptcy court's decision on other grounds, and therefore does not address the issue of forfeiture." Because this Court likewise affirms the district court's decision on other grounds, we need not reach the question of forfeiture.

## III. ANALYSIS

### A. The Harkey parties have standing to pursue this appeal.

The Trustee argues Appellants lack standing to pursue this appeal because they are not pecuniarily harmed by the bankruptcy court's order. The Trustee moved to assume Dillon's operating agreement after the deadline for assuming or rejecting the executory contract had passed. The bankruptcy court granted this motion in its Assumption Order. The district court initially found Appellants lacked standing to challenge the bankruptcy court's order because they did not attend the hearing before the bankruptcy court.

This Court reversed and remanded. *Matter of Point Ctr. Fin., Inc.*, 890 F.3d 1188. This Court reviewed the district court's decision de novo. *Id.* at 1191. In order to appeal a bankruptcy court's order, Appellants must be "directly and adversely affected pecuniarily" by the order. *Matter of Fondiller*, 707 F.2d 441, 442 (9th Cir. 1983). This Court found that "[b]ankruptcy standing concerns whether an individual or entity is 'aggrieved,' not whether one makes that known to the bankruptcy court," and therefore Appellants failure to appear in court did not deprive them of standing to appeal the bankruptcy court's order. *Matter of Point Ctr. Fin., Inc.*, 890 F.3d at 1193.

The Trustee now argues Appellants lack standing to pursue this appeal because they are not pecuniarily harmed given that the bankruptcy court's order does not require them to do anything or surrender any property. Appellants explain that their interest in reversing the bankruptcy court's order means preventing Dillon's investors from "forfeit[ing] another thirty to forty percent of the remaining cash available through the deduction of the 'springing'

management fee created by the bankruptcy court's order." The Trustee argues that, because the bankruptcy court found that the issue of management fees would be dealt with in another proceeding, Appellants cannot claim this is a pecuniary interest affected by the bankruptcy court's order.

This Court finds Appellants have standing to bring this appeal. Even if the management fees will be addressed in another proceeding, Appellants' ability to pursue them is dependent on the bankruptcy court's original order and this appeal. This Court has already found "there is no question that Appellants' pecuniary interests are directly and adversely affected by the bankruptcy court order in question." *Matter of Point Ctr. Fin., Inc.*, 890 F.3d at 1194.

**B. The bankruptcy court had subject matter jurisdiction to confirm the vote establishing the Trustee as manager of Dillon and to hear the assumption motion.**

28 U.S.C. § 1334(b) and (e) provide:

> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
>
> . . .
>
> (e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—

(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate[.]

Appellants argue the district court erroneously found the bankruptcy court had jurisdiction to extend the deadline for the Trustee to accept the operating agreement. They argue that when the original deadline to assume or reject the operating agreement passed, this constituted a statutory rejection of the agreement, meaning the agreement was no longer property of the estate and, therefore, the bankruptcy court had no jurisdiction over it under § 1334(e). *See* 11 U.S.C. § 365(d)(1) ("In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.").

The Trustee argues that Appellants base their argument on the erroneous belief that the operating agreement is an executory contract.[1] But even if the operating agreement is

---

[1] The district court assumed, but did not decide, that the operating agreement was an executory contract. The district court stated that "[i]t is not clear whether Appellee contends the Agreement is not an executory contract" and that "[n]either party has adequately addressed the issue and the Court need not decide it." Though the district court noted "Dillon's members have ongoing financial obligations and are required to vote to remove the manager, and PCF has ongoing fiduciary and managerial obligations," citing *In re Robert L. Helms Constr. & Dev. Co.,* 139 F.3d 702, 705 (9th Cir. 1998) ("[A] contract is executory if the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.") (quotation marks omitted).

executory, the Trustee claims rejection of the operating agreement resulted only in its breach and did not deprive the bankruptcy court of jurisdiction.

This Court finds that the Trustee's failure to assume the operating agreement by the bankruptcy court's deadline did not deprive the court of jurisdiction over matters relating to the Dillon operating agreement. Appellants' argument that the bankruptcy court could not rule on the Trustee's assumption motion under § 1334(e) is unavailing because the subject of that motion, the operating agreement, was not outside the bankruptcy estate.  Even had there been a rejection of the operating agreement, the operating agreement would remain part of the estate because rejection of an executory contract merely constitutes a breach. *See Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1661 (2019).

In any event, § 1334(b) provides an alternative jurisdictional basis for the bankruptcy court's order confirming the Trustee's election as manager and permitting him to assume the operating agreement.  The Trustee's election as manager of Dillon, acting in his capacity as Trustee of the estate, is undoubtedly "related to" the bankruptcy proceeding under § 1334(b).  And § 1334(b) also affords the district court (and thus the bankruptcy court by reference under 28 U.S.C. § 157(a)) jurisdiction over matters "arising under" the Bankruptcy Code. A proceeding "arises under" the Bankruptcy Code if it "has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." *In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010). Appellants make the tenuous argument that neither "arising under" nor "related to" jurisdiction empowered the bankruptcy court to rule on the Trustee's

assumption motion after the purported rejection of the operating agreement. As this Court explains *infra* Section IV, however, where a bankruptcy court makes a finding of excusable neglect for the failure to seek a timely extension of a deadline pursuant to Fed. R. Bankr. P. 9006(b)(1)(2), it may retroactively extend its own deadline. *See In re Chira*, 343 B.R. 361, 370–71 (Bankr. S.D. Fla. 2006), *aff'd In re Chira*, 367 B.R. 888 (S.D. Fla. 2007). And that is precisely what the bankruptcy court did in this case. Having once granted the Trustee an extension of the deadline to assume or reject the operating agreement, the bankruptcy court— upon a showing of excusable neglect by the Trustee— retroactively permitted a subsequent extension of that deadline through the date that it ultimately entered an order granting the Assumption Motion. The Trustee's request that the bankruptcy court extend the deadline to assume the operating agreement would "ha[ve] no independent existence outside of the bankruptcy court and could not be brought in another forum" and thus fell squarely within the bankruptcy court's "arising under" jurisdiction in § 1334(b). *Id.*

The district court's analysis of the jurisdictional question is brief and does not consider Appellants' arguments regarding § 1334. Rather, the district court concluded that "the question of whether the Trustee can assume the Agreement is a core proceeding within the meaning of § 157, and the bankruptcy court had jurisdiction to hear the Assumption Motion."

28 U.S.C. § 157 provides:

> (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be

referred to the bankruptcy judges for the district.

(b) (1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

Appellants argue the district court's holding is erroneous because § 157 is not a jurisdictional statute. In *Stern v. Marshall*, the Supreme Court explained, "[s]ection 157 allocates the authority to enter final judgment between the bankruptcy court and the district court… . That allocation does not implicate questions of subject matter jurisdiction." 564 U.S. 462, 480 (2011) (internal citation omitted). The Court went on to explain, "the district courts of the United States have 'original and exclusive jurisdiction of all cases under title 11.'" *Id.* at 473 (quoting 28 U.S.C. §1334(a)). "The *manner* in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved. Bankruptcy judges may hear and enter final judgments in 'all core proceedings arising under title 11, or arising in a case under title 11.'" *Id.* at 473–74 (emphasis added) (quoting 28 U.S.C. § 157(b)(1)).

Section 157(b) clearly "is not the source of the bankruptcy court's jurisdiction," and it "applies only if there is jurisdiction in the first place under 28 U.S.C. § 1334." *Omicron Sys., Inc. v. Weiner (In re Weiner)*, 05-566, 2006 WL 6659548, at *4 (Bankr. E.D. Pa. Apr. 19, 2006). And it may be the case post-*Stern* that "[w]hile a district court is authorized to refer matters to a bankruptcy court, *see*

28 U.S.C. § 157(a), that provision [likewise] is not jurisdictional." *Potter v. Newkirk*, No. 19-1728, 2020 WL 549767, at *2 (3d Cir. Feb. 4, 2020) (citing *Stern*, 564 U.S. at 480).**[2]** But, in any event, jurisdiction resided in the district court under § 1334(b) and in the bankruptcy court by reference from the district court under § 157(a) and its general order of reference. Thus, this Court concludes the district court did not err in finding the bankruptcy court had jurisdiction to hear the assumption motion. Even if the District Court incorrectly based jurisdiction on § 157, the bankruptcy court still had jurisdiction under § 1334(b) for the reasons stated above.

## C. The bankruptcy court properly authorized the Trustee to exercise management rights over Dillon after the majority of Dillon's members voted for the trustee to manage Dillon.

On January 30, 2014, the bankruptcy court granted the Trustee's motion to extend the statutory deadline for assumption of the operating agreement through February 28, 2014. As discussed above, the Trustee did not assume the agreement by that new deadline or move for an additional extension because of Harkey's misrepresentations regarding the potential sale of real estate owned by Dillon. On May 31, 2016, the Trustee filed a motion seeking an order (1) authorizing the Trustee to exercise management rights

---

**[2]** *But see Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995) ("Here, the Bankruptcy Court's jurisdiction . . . must be based on the 'arising under,' 'arising in,' or 'related to' language of §§ 1334(b) and 157(a)."); *In re Am. Hardwoods, Inc.*, 885 F.2d 621, 623 (9th Cir. 1989) ("Similar to section 1334(b), section 157(a) grants to bankruptcy courts jurisdiction over 'any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11.'").

over Dillon pursuant to a majority vote of Dillon's members, and alternatively (2) authorizing the Trustee to assume Dillon's operating agreement. On June 29, 2016 the bankruptcy court approved both the Trustee's election as manager and his assumption of the operating agreement. On October 9, 2018, the district court affirmed. With respect to the Trustee's election as manager, the district court reasoned that because a majority of Dillon's members voted for the Trustee to manage Dillon, the Trustee could exercise management authority over Dillon, and that authority was not affected by any rejection of the operating agreement. The court found: "Rejection did not cause Appellant Dan J. Harkey to become manager of Dillon, nor did it remove PCF as manager. Instead it constituted a breach of the Agreement and permitted creditors to file a claim."

Appellants argue that confirming the Trustee's election as the manager of Dillon, a non-debtor entity, presented no case or controversy for resolution because the Trustee contends the vote was valid with or without the bankruptcy court order confirming the election, and therefore, Appellants argue, there was nothing at stake when the Trustee moved for the bankruptcy court to confirm the vote.

The Trustee contends that after he did not assume the operating agreement by February 28, 2014, some members of Dillon thought PCF remained the manager while others thought there was no manager. To eliminate any dispute, approximately 60% of the membership interests in Dillon voted to appoint or reinstate PCF as the manager of Dillon. The majority of Dillon's members voted for the Trustee to manage Dillon and had a vested interest in protecting their rights, and the bankruptcy court properly approved their vote.

This Court finds Appellants' jurisdictional claim that the bankruptcy court lacked the ability to approve the Trustee as manager of Dillon because the operating agreement was not part of the bankruptcy estate fails. Here, the Trustee was not elected as manager in his private capacity; he was elected to manage Dillon on behalf of the bankruptcy estate, to earn a management fee for that estate. As discussed above, the question whether the Trustee, acting on behalf of the bankruptcy estate, could exercise management authority over Dillon "related to" the bankruptcy proceeding. *See* 28 U.S.C. § 1334(b); *supra* Part III.B.

Moreover, the bankruptcy court was within its authority to enter an order confirming the Trustee's election as manager of Dillon. It is well established that bankruptcy courts have "considerable discretion" to approve motions authorizing resolutions appointing or removing managers of LLCs. *See, e.g., In re Walter*, 83 B.R. 14, 17 (B.A.P. 9th Cir. 1988) ("The bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession."). And Appellants cite no case law to support their argument that there is somehow no case or controversy presented when the bankruptcy court confirmed the Trustee's election as manager of Dillon. They claim the Trustee admits there is no controversy when he acknowledges "[t]he vote of Dillon's members was conducted independent of the assumption of the operating agreement and is valid with or without an order of the bankruptcy court." But the fact that members of Dillon voted to authorize the Trustee to exercise PCF's managements rights in Dillon does not mean the bankruptcy court lacked jurisdiction to enter an order approving the vote. The Trustee's contention that the vote was "valid" is not akin to conceding that it was not subject to court approval.

**D. The bankruptcy court properly extended its own deadline for assumption of the operating agreement pursuant to Fed. R. Bankr. P. 9006(b)(1)(2).**

Our decision does not hinge on the bankruptcy court's order confirming the Trustee's election as manager of Dillon, however, because an alternative ground supports the district court's judgment. Even if the Trustee had not been elected as manager, the bankruptcy court could properly extend the deadline for the Trustee to assume the operating agreement under the Federal Rules of Bankruptcy Procedure.

Whether the bankruptcy court properly extended the deadline for assumption of the operating agreement is governed by Fed. R. Bankr. P. 9006(b)(1)(2). We conclude that Rule 9006(b)(1)(2)'s plain language permitted the bankruptcy court to extend the deadline.

Federal Rule of Bankruptcy Procedure 9006(b)(1) and (2) provide:

> (1) *In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done

where the failure to act was the result of excusable neglect.

(2) *Enlargement Not Permitted*. The court may not enlarge the time for taking action under Rules 1007(d), 2003(a) and (d), 7052, 9023, and 9024.

The bankruptcy court's extension fits within Rule 9006(b)'s plain language. "[A]n act [was] required . . . to be done at or within a specified period by . . . order of court," because the bankruptcy court's order extending the initial deadline established a new deadline for the Trustee to assume or reject the operating agreement. The Trustee moved for an extension "after the expiration of the specified time period," and the district court found that his failure to act by the deadline "was the result of excusable neglect" based on Harkey's dishonest statements. Therefore, the bankruptcy court properly extended its own deadline under Rule 9006(b), and the Trustee's assumption of the operating agreement was valid.

Although 11 U.S.C. § 365(d)(1) establishes a statutory 60-day deadline for assuming or rejecting executory contracts, the bankruptcy court's order extending the Trustee's deadline did not run afoul of this provision. Section 365(d)(1) permits the bankruptcy court to grant a trustee "additional time . . . for cause" within that 60-day period, and the bankruptcy court did so here. Thus, when the bankruptcy court later extended the deadline again, it was extending a period specified by "order of court," *see* Fed. R. Bankr. P. 9006(b)(1), not extending a deadline mandated by statute.

Appellants argue that the relief the Trustee sought constituted Fed. R. Bankr. P. 9023 (Fed. R. Civ. P. 59) and Fed. R. Bankr. P.9024 (Fed R. Civ. P. 60(b)) motions, which they argue the bankruptcy court was barred from extending under the exception in Rule 9006(b)(2). They contend that, contrary to the district court's opinion, the Trustee sought to "reconsider," or modify, the extension order, arguing "[a] motion that seeks to alter the relief granted in a prior order necessarily seeks to modify the prior order."

The Trustee argues that the bankruptcy court did not extend the statutory deadline under § 365(d) or Fed. R. Civ. P. 60, but its own deadline established in its January 30, 2014 order. This, he argues, is permitted by Rule 9006(b)(1)(2). The Trustee agrees with the district court that "given that a Rule 60 motion is an exception to the general rule of 9006(b)(1)…a request to extend a date under it cannot generally be considered a Rule 60 motion or the exception would swallow the rule." *See In re Chira*, 343 B.R. at 370–71 (retroactively extending court-ordered deadline to assume executory contract and explaining that "[o]nce the court has taken control of the § 365 deadline by extending it once or more, the new deadline is one governed by the general rules governing enlargement of time under Rule 9006(b)(1)"), *aff'd In re Chira*, 367 B.R. 888 (S.D. Fla. 2007); *see also In re Pan Am. Hosp. Corp.*, No. 06-CIV-21593, 2006 WL 8434254, at *5 (S.D. Fla. Sept. 6, 2006) (stating that the court "concur[s] entirely with [the] reasoning in [the *Chira*] opinion).

The district court explained the Assumption Motion sought to extend the court-ordered deadline, not the statutory deadline. It found "Appellants offer no authority supporting the proposition that the bankruptcy court lacked authority to retroactively extend the deadline in its order pursuant to

9006(b) and the plain language of the rule supports that authority in this circumstance." The lower court explained:

> Appellee did not seek to vacate or reconsider the original order extending the deadline to assume the Agreement. Appellee made a motion for an entirely new order extending the deadline set in the previous order… given that a Rule 60 motion is an exception to the general rule of Rule 9006(b)(1), *see* Rule 9006(b)(1)–(2), a request to extend a date under it cannot generally be considered a Rule 60 motion or the exception would swallow the rule.

We affirm the district court's holding that the bankruptcy court had authority under Rule 9006(b)(1)(2) to modify its order extending the deadline to accept or reject the operating agreement upon a finding of excusable neglect. The cases Appellants rely on do not deal with a court's ability to extend a deadline established by its own order. *See Bd. of Trs. of W. Conference of Teamsters Pension Tr. Fund v. P & H Distrib.*, 2 F.3d 1156 (9th Cir. 1993) (vacating and remanding district court decision that permitted a Rule 60(b) motion to be filed beyond the one year deadline imposed by the rule); *Nevitt v. United States*, 886 F.2d 1187, 1188 (9th Cir. 1989) (finding Rule 60(b) motion untimely and one-year limitation period not tolled during appeal).

Appellants argue that *In re Tompkins*, 95 B.R. 722 (B.A.P. 9th Cir. 1989) is on point, but that case deals with the expiration of a *statutory* deadline that was not previously extended by the court. In *Tompkins*, the debtors entered into a lease-option agreement with appellants during their Chapter 11 case. After the case was converted to Chapter 7,

the trustee failed to seek an extension of the deadline to assume or reject the agreement (60 days after the conversion) or to file a motion requesting the assumption of the agreement. The deadline to assume the agreement having expired, the debtors filed a motion asking the bankruptcy court to extend the time for the trustee to assume or reject the agreement, and the court granted the motion. *Id.* at 723. The Bankruptcy Appellate Panel reversed, holding that the motion was untimely because it was not filed within 60 days of the conversion of the debtors' case to Chapter 7. *Id.* at 724. The BAP rejected the debtors' argument that the 60-day deadline should not apply because the trustee became aware of the agreement only at the meeting of creditors. According to the BAP, "[o]nce the 60 day period expired without any action taken by the trustee, the lease was deemed rejected and the court had no authority to revive the lease." *Id.* But the BAP reached this conclusion in the context of a deadline to assume or reject that was never extended by court order until after the deadline expired, and the BAP did not even reach the issue of excusable neglect under Rule 9006(b)(1)(2).

In short, none of the decisions on which Appellants rely addressed the precise issue in this case, and so this is an issue of first impression in this Circuit. This Court agrees with *Chira* based on the plain language of the Federal Rules of Bankruptcy Procedure. In *Chira*, the bankruptcy court, before the expiration of the § 365(d) 60-day statutory deadline, extended the deadline for assumption of an executory contract an additional 45 days. 343 B.R. at 369. After the court-imposed deadline expired, the court then granted the Trustee's motion for retroactive extension of the deadline upon a finding of excusable neglect under Fed. R. Bankr. P. 9006(b)(1)(2). *Id.* The court in *Chira* explained the distinction between cases where "the court is powerless to

modify the deadline in an *ex post facto* manner" once the initial 60-day period has expired, and cases where "the court has taken control of the § 365 deadline by extending it once or more." *Id.* at 371. This case falls into the latter category, and therefore is governed by the enlargement rules of Rule 9006(b)(1), not the exception in 9006(b)(2).

Appellee contends that Mr. Harkey's misrepresentations about the status of Dillon—namely, failure to disclose a pending multimillion-dollar sale—was the basis for Appellee's delay in assuming the operating agreement. The district court found that "the affirmative misconduct of Mr. Harkey was the reason for the delay in assuming the Agreement," and therefore the bankruptcy court did not abuse its discretion in finding excusable neglect. Appellants have not challenged the excusable neglect finding on this appeal. While Appellants express concerns about the unpredictability of such a rule, 9006(b)(1)(2) is limited to circumstances in which the bankruptcy court makes a finding of excusable neglect, and this high bar is sufficient to limit the rule's effect.

## E. The Court need not reach the question of equitable mootness because it affirms the district court on other grounds.

Appellees also argue the Court should exercise its discretion to find the appeal equitably moot. This Court has held that a court may dismiss an appeal as equitably moot when there has been a "comprehensive change of circumstances" so "as to render it inequitable for this court to consider the merits of the appeal." *In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir. 1981). "[E]quitable mootness" is a "judge-made abstention doctrine unrelated to the constitutional prohibition against hearing moot appeals." *In re Mortgages Ltd.*, 771 F.3d 1211, 1214 (9th Cir. 2014)

(quotation omitted). Because the Court affirms the district court's opinion on the merits, it declines to reach the question of equitable mootness.

## CONCLUSION

For the foregoing reasons, the opinion of the district court is **AFFIRMED.**

---

CHRISTEN, Circuit Judge, concurring in part, dissenting in part:

I concur in the result reached by the majority. I agree with the majority's conclusion that appellants have standing to pursue this appeal, and that the bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 1334(b). The district court erred by relying on 28 U.S.C. § 157 as a basis for jurisdiction. Section 157 allocates authority between bankruptcy courts and district courts, but cannot serve as a basis for the assertion of subject matter jurisdiction. *See Stern v. Marshall*, 564 U.S. 462, 480 (2011).

I part ways with the majority's decision that the bankruptcy court permissibly reopened the statutory period for the Trustee to accept Dillon, LLC's operating agreement. Pursuant to 11 U.S.C. § 365(d), Congress allowed a 60-day window for Chapter 7 trustees to assume or reject executory contracts or unexpired leases. During that 60-day window, the Trustee in this proceeding requested and received an extension of time. No one disputes that it was within the bankruptcy court's authority to grant an extension of the 60-day window "for cause" before the 60-day period expired. 11 U.S.C. § 365(d)(1). But the bankruptcy court's extended deadline also passed without the Trustee taking any action to

accept the operating agreement.  Accordingly, by operation of § 365(d), the LLC's operating agreement was deemed rejected.  The majority relies on Federal Rule of Bankruptcy Procedure 9006(b)(1), a general provision that allows bankruptcy courts to extend their own deadlines, to conclude that the bankruptcy court had the authority to allow the Trustee to retroactively assume Dillon's operating agreement two and a half years after it was deemed rejected by operation of law.  Because I am not persuaded that the bankruptcy court had the authority to retroactively reopen the period Congress specified for accepting an executory contract, and because it appears the majority's reasoning would allow the bankruptcy court to reopen and extend any deadline without limit, I do not join section III(d) of the majority's opinion.  I would affirm the district court's alternative holding, that the appeal of the bankruptcy court's order is equitably moot.  *See Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 1211, 1214–15 (9th Cir. 2014).

The doctrine of equitable mootness is alive and well in our circuit.  *See id.*; *see also Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869 (9th Cir. 2012).  It has been recognized by our case law since at least 1981.  *See Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.)*, 652 F.2d 793 (9th Cir. 1981).  The doctrine applies in Chapter 7 proceedings, *see, e.g.*, *Fitzgerald v. Ninn Worx SR, Inc. (In re Fitzgerald)*, 428 B.R. 872, 881–82 (B.A.P. 9th Cir. 2010); *Darby v. Zimmerman (In re Popp)*, 323 B.R. 260, 271 (B.A.P. 9th Cir. 2005), and it allows the dismissal of bankruptcy appeals if there has been a "comprehensive change of circumstances" that would render it inequitable for our court to consider the merits of an appeal.  *In re Mortgs.*, 771 F.3d at 1214 (quoting *In re Thorpe*, 677 F.3d at 880).

Equitable mootness is a judge-made abstention doctrine, rather than a determination that our court lacks Article III subject matter jurisdiction. *Id.* A bankruptcy appeal is equitably moot "if the case presents 'transactions that are so complex or difficult to unwind' that 'debtors, creditors, and third parties are entitled to rely on [the] final bankruptcy court order.'" *Id.* at 1215 (alteration in original) (quoting *In re Thorpe*, 677 F.3d at 880). We employ this doctrine because "public policy values the finality of bankruptcy judgments," *In re Thorpe*, 677 F.3d at 880, and because bankruptcy proceedings "often implicate parties besides the debtor and its creditors," *In re Mortgs.*, 771 F.3d at 1216.

For these reasons, where bankruptcy proceedings have continued in the wake of a bankruptcy court order that a litigant wishes to challenge, we consider as a threshold inquiry whether the party challenging the bankruptcy court ruling sought a stay pending appeal. *Id.* at 1215. The requirement for seeking a stay is grounded in equity; it signals to third parties that any transactions they enter into with the bankruptcy estate may not be final. *Id.* at 1216. "If the disagreeing party fails to seek a stay, any third parties who purchased property or extended a loan may later have a transaction undone without sufficient notice." *Id.* Where a stay was requested, the appellate court considers the remaining three *Thorpe* factors before entertaining the appeal: whether "substantial consummation" of the bankruptcy plan has occurred; "the effect a remedy may have on third parties not before the court"; and whether the court "can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation." 677 F.3d at 881.

This case is a prime candidate for application of the equitable mootness doctrine, not because the appellants' argument lacks merit, but because they slept on their right to raise it. The original deadline to accept or reject Dillon's operating agreement was 60 days from the date the case was converted to Chapter 7: October 28, 2013. *See In re Tompkins*, 95 B.R. 722, 724 (B.A.P. 9th Cir. 1989). Within the 60-day timeframe imposed by § 365(d), the Trustee timely requested and received an extension until February 28, 2014 to assume the operating agreement. The new deadline came and went, but the Trustee took no action and the operating agreement was deemed rejected by operation of § 365(d). Two and a half years later, on June 30, 2016, the bankruptcy court retroactively reopened the expired February 2014 deadline and allowed the Trustee to assume Dillon's operating agreement as of the original February 2013 petition date.[1]

In July 2016, appellants timely sought a stay of the order that authorized the Trustee to assume the Dillon operating agreement *nunc pro tunc*. The motion for a stay was to be heard in October 2016, but appellants voluntarily withdrew the motion a month before the hearing. This allowed the Trustee to proceed with his plan to wind up Dillon's affairs. The Trustee foreclosed on Dillon's real property and, in November 2017, sought an order approving the liquidation of Dillon's assets and distribution of the sales proceeds. The bankruptcy court allowed the Trustee to proceed with

---

[1] The district court's decision includes the statement that "the affirmative misconduct of Mr. Harkey was the reason for the [Trustee's] delay in assuming the Agreement," but the bankruptcy court did not make that finding or decide whether Harkey's conduct prevented the Trustee from acting. Neither our court nor the district court acting in its appellate capacity are empowered to make factual findings. *See Forest Grove Sch. Dist. v. T.A.*, 638 F.3d 1234, 1238 (9th Cir. 2011).

liquidation and distribution, and the Trustee entered into individual settlement agreements with Dillon's members. As of February 2019, the Trustee represented that he had entered 97 settlement agreements and distributed funds pursuant to those agreements, including one with the state-court-appointed receiver who held approximately 40% of Dillon's ownership interests. On appeal, appellants object that the Trustee was retroactively given an extra 854 days to assume Dillon's operating agreement. More to the point, they argue that the bankruptcy court lacked the authority to reopen the § 365 deadline and accept an operating agreement that had been deemed rejected by operation of law. Appellants raised a serious objection, but it has been three and a half years since they sought, and affirmatively withdrew, their motion for a stay pending appeal. Appellants do not explain why they withdrew their motion for a stay and allowed the Trustee to go forward with the sale and liquidation of Dillon's assets. Whatever the reason, at this point it would be entirely inequitable to grant relief and risk disrupting the 97 distributions and allocations made to third parties not before us. *See In re Mortgs.*, 771 F.3d at 1217.

The district court gave two alternative reasons for affirming the bankruptcy court's order reopening the § 365 deadline. First, the district court decided the bankruptcy court properly applied Rule 9006(b)(1) to extend its own deadline for the Trustee to assume the operating agreement. Alternatively, the district court applied the four-part *Thorpe* test, correctly determined that all parts of the test were satisfied, and decided that this appeal was equitably moot. The majority approves the retroactive extension of § 365's 60-day window, but leaves unanswered what limits are to be placed on the bankruptcy court's new-found authority to extend statutory deadlines dictated by Congress.

The single out-of-circuit case the majority cites offers only anemic support for its holding. *See In re Chira*, 343 B.R. 361 (Bankr. S.D. Fla. 2006). *Chira* involved a sale of real property to a third-party buyer, and a Chapter 7 trustee's motion to assume a purchase agreement. *Id.* at 363. The court granted an initial extension of the § 365 deadline. Thereafter, the trustee and the purchaser agreed several times to extend the court-extended deadline for assumption of the real estate contract. *Id.* at 370. The most recently extended deadline passed without an additional motion requesting another extension, but it was uncontested that the parties and the court intended that the court's extended deadline was to be reextended before it expired. *Id.* at 369, 371. Something—perhaps an oversight or clerical error—prevented the trustee from receiving notice of the bankruptcy court's most recent deadline for accepting or rejecting the contract. *Id.* at 371. The trustee's motion explained that she had not been served with the court's order announcing the most recent deadline, and had not learned of the order until a court hearing two days before she sought relief. *Id.* at 370. The bankruptcy court made factual findings that no party of interest would be prejudiced, and that the "duration of the delay and its effects upon the orderly and efficient administration of this case are *de minimis*," before invoking its equitable power to enter an order extending its own expired deadline. *Id.* at 371. It was in this context that the *Chira* court held that "[o]nce the court has taken control of the § 365 deadline by extending it once or more, the new deadline is one governed by the general rules governing enlargement of time under Rule 9006(b)(1)." *Id.* at 371. *Chira* is neither binding nor persuasive; it is an extreme outlier and the circumstances in *Chira*, including the bankruptcy court's finding that no party would be prejudiced by the trustee's failure to act, are entirely distinguishable from the two-and-a-half-year interval that occurred here.

I take no issue with a bankruptcy court's ability to extend the § 365 deadline within the 60-day window, or to further extend a court-granted extension before the extended deadline has expired. Where § 365 deadlines are extended within § 365's 60-day window, parties are not disadvantaged because they are on notice that the deadline has been extended and can rely on the new date. In contrast, the majority's new rule will leave parties guessing about whether expired deadlines will be revived years after the fact. Because this case is an easy fit for the doctrine of equitable mootness, I would affirm on that basis alone.